The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its honorable court. He's cheated, sir. Good morning. We have four argued cases this morning. The first of these is number 14, 1631, Diet Goal, Innovations, LLC versus Bravo Media, LLC. Mr. Buecher, is that how you pronounce it? Buecher. Buecher. May I approach, Your Honor? Yes. Thank you. May it please the court, my name is Eric Buecher and I represent the plaintiff in the case below and the appellant here, Diet Goal. This appeal involves a patent invented by Dr. Oliver Alabaster who happens to be here in the courtroom with us. Once again, the court is being asked to address the issue of how to apply the abstract idea exception in the context of a computer implemented invention. In this case, the district court invalidated 61 claims, all of the claims of this patent. We believe that the district court did so by not giving enough weight to the key limitations in the patent that make this a particular application of meal planning that is computer implemented and those implementations are central to the invention and as a result erroneously invalidated these claims. The court did not conduct any claim construction ruling, but more importantly, I think the decision reflects a misapprehension by the court of these key limitations and a failure to give them the weight that they should had he done so, we think, or had any judge done so, we think he would have reached a different conclusion. Is your argument that the court should have undertaken claim construction before ruling on the patent? Good question. I think this court can rule on this matter without sending it back down for further claim construction, because we believe that the claim language on its face is enough to show that there are meaningful limitations that restrict the scope of the claims to a particular application that does not preempt the entire idea of meal planning. So you're saying that the court did not have to engage in claim construction? I think the problem is that the court didn't engage in any rigorous analysis of the claim terms and what their impact was on the 101 issue. Had it done so, I think it would have reached a different conclusion, which is why we agreed to the early ruling on the summary judgment motion in this regard. We were not trying to drag this out and avoid the issue. We think the issue is fairly clear from the language of the claims that they do have these key limitations that preclude preemption of the general concept or idea of meal planning. So my point about his failure, the judge's failure to do a claim construction, I think that led to a faulty 101 analysis. Had he done a claim construction analysis, I think he would have understood the limitations better and applied them more appropriately, which is why this court has said, although claim construction is not required, it is often desirable. I think this case exemplifies that desirability, because it leaves you with a rather imprecise record to deal with. Luckily, I believe that the claim limitations that are key are adequate enough to enable this court to not have to guess at what the claims mean, but determine that they do have meaningful limitations. Now those key limitations are the customized eating goals, which the Texas court and then Judge Engelmeyer's sister, Judge, in the time case, both held that… I'm sorry, I'm sorry. What case says that if you have an abstract idea that's computer implemented and you claim only part of the abstract idea… Well, yeah, I think… Wait, one second. Okay. That says that that renders it patentable. What case says that? Because it doesn't preempt the entire abstract concept, and preemption, as the court analysis emphasized, is the key concern driving this exception. It's an exception that should be narrowly applied, and I think what's happening overall, but particularly in this case, is that that exception is not being cabined and narrowly applied. It's being applied without a rigorous analysis of the claim terms and with a belief that there has to be a new machine, as this judge said. What are the applications, then, that take you out of the embracement? Several, but the key one is the display limitations. But you have customized eating goals, which the Texas and New York time courts said have to be computer implemented and cannot be merely a mental process. The picture menus limitation requires the display of meals from which the user can select a meal to meet those customized eating goals. The meal builder required a display of meals that the user can create or change. What's new or unconventional about a display? Well, what's new about this display, this is not post-solution activity. This is not merely the result of some computation done by the computer. One of the key objectives of this invention was visual training for meal planning, and that's the name of the patent, and throughout the patent… Tell us about what's innovative. What's innovative is that rather than… It's rather common to have pictures of meals and connections with diets. Not that have the interactivity that this patent claims. The picture menus, the display of meals, has to enable the user to select a meal from that display. The display of the meal builder requires the user to be able to either create the meal or change it. How is that different from going through a box full of recipes and looking at the pictures and saying, well, I don't know about this one, maybe this is a good one? Well, in this case, the display accurately reflects exactly what the user is choosing as his or her food objects and overall meal, and so there is this interactivity and external visual display that is important in the training techniques that the patent teaches. I think this is very much like the DDR case in that what was innovative there was a display of a website store, and what made it innovative was it had this hybrid concept so you thought you were still at the same website when actually you were taken via an advertising click to a different set of information, but it was portrayed in a way that didn't give you the feeling that you just got moved to a different website. I think this is similar in that the display functions here are critical to the solution that the patent offers. They are central to it. The patent explains that in some detail, and they are not post-solution activity. They are central and integral to the invention, and therefore they ground it in something other than generic computer functionality, and we just think that the district court below did not give sufficient weight to these key limitations. Instead, you saw that he viewed the patent holistically and tried to determine the totality of the invention and what the essence of the invention is, and this court has repeatedly said… Let's go back to Dr. Fletcher. What is the inventive step? The inventive concept here that takes it out of just merely applying an abstract idea on a computer is requiring this interactivity between the user and the visual display and giving the user this external visual display of what it is that he is thinking about eating and whether that will meet, coincide with whatever dietary objectives the user has, whether it is caloric intent or carbs or cholesterol. But people do this all the time. But it is a very cumbersome process to try to do it manually. It is hard to actually…a picture that you see in a recipe book may have all kinds of foods that you are not choosing, and it may have other sizes or amounts of foods that you are not choosing, so it is a very inartful, poor technique. But we have said, have we not, that doing it faster doesn't make it happen? In this case, it is not faster. It is better and it is more accurate. Because of that interactivity and you get shown what you select or what you specify, the visual training is much more improved. In fact, even Judge Engelmeyer acknowledged that this appeared to be a new and improved visual training device. He thought, though, that the computer has to be a new machine in order to be patent eligible, or the code, there has to be a specified formula, and this court has never required that. So when you look at these limitations, and again, this is rooted in the computer. This is not data gathering or data retrieval or data storage, those kind of acknowledged generic routine functions that computers do. This has this interactivity of the display central to the solution of the patent, and therefore it is a particular application of meal planning and not generically claiming the entire abstract idea. And in fact, the patent itself distinguishes two pieces of very close prior art, the Kutch patent and the Dennison patent, and distinguished this invention over those two prior art references on many grounds, but one of them was, in Dennison, it was, excuse me, Your Honor, no graphic visual displays are provided, which further detracts from ease of use, comprehension, and effectiveness. And then the Kutch patent, which was a computerized method of meal planning that had a display even, the patent explains why the invention claimed here is distinguishable over that patent, and I submit, Your Honors, that clearly the invention here does not cover those two prior art computer-implemented meal planning techniques, and therefore it clearly doesn't preempt the abstract idea of meal planning, because Kutch and Dennison dealt with computer-implemented meal planning with a display. I mean, again, it was close prior art, but the patent was distinguished over it, and so therefore I think it's fairly evident that this is a particular application that avoids preempting the entire idea, abstract idea of meal planning. The other issue that we have with Judge Inglemeyer's ruling is that, one, his assertion, if you will, that the limitations of the claims merely are generic computer functionality, I just think is belied by the language of the claims. Again, there's nothing generic about this very specific implementation of the display of the meals, and furthermore, there is no evidence to say that this is generic, and we're getting into an area here with this issue where courts are just throwing out the word generic, and sometimes it's a fact issue, although this question of 101 is a question of law, there are underlying fact issues, and I believe that the judge here, at a minimum, overstepped his grounds when he made these findings, if you will, without any evidence on the record to support them. I'm into my rebuttal time, Your Honor, so if you have – I'm here right now, if you have any questions, further questions, otherwise I'll save my time. Thank you, Your Honor. Mr. Caroline? May it please the Court. This morning my personal eating goals were high protein, so I would be alert all morning and answer questions, and more fruit and vegetables because my wife tells me I need to eat more of those. So at breakfast I looked at the menu, I pictured the options in my head, and I built my meal by selecting an omelet, some Greek yogurt, and a banana. By building my meal that way I was fairly confident that I would indeed meet my eating goals for the day. What I did this morning to build my meal to meet my eating goals is what people have been doing every day for centuries. That is the abstract concept that this patent tries to claim. While the patent does sprinkle in various elements for a computer such as a display or a database, the Supreme Court in Alice confirmed that the addition of these conventional computer elements to perform a fundamental method of organizing human activity is not sufficient to pass muster under Section 101. It seems to me that your opponent was arguing that this interaction between the different displays and the user choosing meal items to add. You can add a pork chop and drop it in for breakfast and go, no, I don't want a pork chop. Let me have a chicken fried steak and you drop, and it gives you a caloric count. Can you do that in your head? You can do it in your head or with pen and paper. It's something else. I don't have memorized in my head the calories of, say, egg whites in an omelet versus whole eggs in an omelet, but I can certainly figure that out. Isn't there an inventive concept here that you have this access to the caloric count of a wide array of meal choices? That is not an inventive concept, Your Honor. All that is is applying what has been done before and could be done by looking something up in a recipe book, adding it up on paper, and instead porting that to your very basic computer functionality. Computers, what they do is they receive user input, selecting the pork chop. They tabulate totals, and they report output on a display. That's what computers have been doing for years before this patent application was filed, and that is not an inventive concept. That is not new technology. That is not something that is separate from the fundamental concept of meal planning to meet eating goals. And Alice confirmed this because, in Alice, it was the same situation where intermediated settlement had been done. It was complicated. It was not exactly the easiest to count things up in your head that way, but it could be done separately. And in CyberSource, CyberSource is another case where the idea that something can be done mentally is sufficient to find that it is excluded from Section 101. I would say that on Step 1 itself, not only did the district court just get this right on whether it's an abstract concept because it fits within this line of cases where the court has found that methods of organizing human activity are not sufficient and they are abstract, and that they are mental steps. Not only did the district court get it right on the merits, but Dietgold did not even argue that Step 1 should be revisited in its appeal brief. It said instead that while it did say that there were two-step tests from the Supreme Court, it said that Step 1 is of limited utility and decided to move on to Step 2. So there's been a waiver on the question of whether this is an abstract concept. And instead, the focus of the court and the focus of Dietgold's brief is on whether there is that something extra that takes this out of the realm of abstract and provides an inventive concept. On Step 2, as I said, the claims fail to add anything. Dietgold points to a bunch of very conventional points. The meal database, well, having a database that is populated specifically with meal information is simply using basic computer storage technology applied to this concept. Picture menus showing images of food, that's basic display technology. Yes, it happens to be on this particular concept, but in the same way in Accenture, in Accenture there were databases for storage, there were processors for performing the specific abstract concept. But just because you've taken generic computer technology and applied it to the particular abstract concept does not magically make this an implementation. In the end, there is simply nothing new. How do you respond to his argument on the DDR case? Yes, on DDR, DDR was a very different case because there what the court found was that it was not an abstract concept that existed separately from computers and the Internet. Instead, the concept there of trying to make sure that people didn't move from one website to another, you wanted to keep people on your site, that is a concept and a problem that exists solely on the Internet. So it was an Internet problem and an Internet solution, an Internet concept and an Internet solution. Here, what we have is a fundamental concept that's been around long before computers. As the district court found, it's at least as longstanding as so many of the other cases that have been found to be abstract, such as intermediate settlement and playing bingo, those types of things. Planning meals has been around for much longer than those. So that takes us away from DDR because here the concept is fundamental, has been around long before computers, and all that Diet Goal has done is add it to a computer to try to make it faster and prettier. That's not sufficient under Alice. The district court performed a very careful, thorough analysis. It looked at the guidepost cases that the Supreme Court has said is how this issue should be decided. It applied those cases to the undisputed intrinsic record, and in the end, it gave Diet Goal every chance to make it the best case. Diet Goal failed to do so, nor could it. The claims fail Section 101. In summary, Judge, it should be affirmed. In Alice, three of the justices concurred and said that the rule should be that methods of organizing human activity are simply unpatentable without going through this more complex analysis. Is it open to us to do that? No, Your Honor. This court must follow the Mayo-Alice two-step process, and that's what we would ask the court to do. Thank you. Your Honor, Judge Mayer, with regard to your question about DDR, and with respect to what Judge Dyke just said, Bilski in the Supreme Court said that business methods are patent eligible. In fact, I was here in 1999 in the AT&T Excel case on the other side of the question where that law was established then, and it is the law of the land here. Well, business methods are broader than methods of organizing human activity. Well, yeah, I'd say they're cousins, if you will. The business methods are economic principles or long-standing commercial practices that are attempted to be modified. Most of those fail, but they are still patent eligible. So the fact that this invention is not confined to the technological process doesn't mean it is detached from technological arts, if you will, and therefore it is rooted in computer technology. What makes it inventive is the external display that a computer monitor gives to a user. So I think that that's an important distinction here, and so the fact that it relates to meal planning, which is outside of the technological realm, doesn't mean it is divorced from the technological realm. Also, this court and research court, I think, made an important statement, and the word or, I think, is being overlooked by some courts. Quote, inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act. That's Research Corp. 627, third at 869. And I think what's important there is that a specific application of an abstract idea is patent eligible, that this particular application is rooted in computer technology and this external display of a monitor. I think it makes that even more appropriate that the court avoid wiping out patent eligible inventions because they simply deal with a business method or a method of organizing human behavior. What are the computer-implemented applications that are unconventional? I think unconventional, I think simply a display of a picture of a meal from a recipe site. There, there's no correspondence between the food and what the user's goal is or chosen food objects for a meal, just a flat, static picture that you can see on many websites. If you want to see a recipe for Cornish hen, it'll show you a Cornish hen, but there's no ability to select a meal from that. There's no ability to change that meal and view the impact of that change on your goals. That's what I think takes this out of the preemption of an abstract idea and makes it a practical or specific application of that idea in a computer context. But isn't that what computers do? You make a change and the computer tells you what the consequences are. But this is not a mere calculation. I think the court has had problems with inventions that merely calculate things and do it faster. These are not mere calculations being done. It's much more than that. My time is up. Thank you.